IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT W. WALTER, | ) | Civ. No. 06-00568 SOM/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DISMISSING FIRST AMENDED |
| | ) | COMPLAINT |
| RICHARD C. DRAYSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DISMISSING FIRST AMENDED COMPLAINT

I.       INTRODUCTION AND BACKGROUND.

          This case is brought by a contingent beneficiary of a

trust who, after the settlor of the trust died, was entitled to

25% of certain assets remaining in the trust.  This contingent

beneficiary, Plaintiff Robert W. Walter ("Robert Walter"), says

that two of the three trustees of the trust, Defendant Richard C.

Drayson ("Drayson") and Defendant Elizabeth Walter ("Elizabeth

Walter"), took certain actions that diminished the trust assets,

depriving Robert Walter of his share of those trust assets.

          On October 20, 2006, Robert Walter, who is an attorney,

filed his Complaint in this matter.  On November 24 and December

6, 2006, Robert Walter filed two motions for preliminary

injunction.  After motions seeking dismissal and seeking to

strike the Complaint were filed, Walter filed a First Amended

Complaint ("FAC") on December 15, 2006.  Claims for injunctive

relief have been abandoned by Robert Walter, but the FAC remains

68 pages long, with 364 paragraphs.  When the attached First

Amended Civil RICO Case Statement is added to the FAC, the combined length of the documents is 126 pages in a font so small it violates Local Rule 10.2.

Before the court are the following motions: (1) Drayson's motion to dismiss the Complaint (Doc. 14); (2) Drayson's motion to strike the Complaint (Doc. 16), in which Elizabeth Walter (Doc. 23) and Defendant Karen Temple and her law firm (collectively, the "Temple Law Firm") (Doc. 29) join; (3) the Temple Law Firm's motion to dismiss the Complaint (Doc. 28); (4) Drayson's motion to strike the FAC (Doc. 33), in which the Temple Law Firm joins (Doc. 40); (5) Drayson's motion to dismiss the FAC (Doc. 34); (6) Elizabeth Walter's motion to dismiss the FAC (Doc. 37), in which Drayson joins (Doc. 43); (7) the Temple Law Firm's motion to dismiss the FAC (Doc. 39); (8) Walter's motion to strike Drayson's memorandum in support of his joinder in Elizabeth Walter's motion to dismiss the FAC (Doc. 90); and (9) Walter's motion to strike portions of Drayson's and Elizabeth Walter's reply memoranda (Doc. 99).  To the extent any of the motions concerned claims asserted in the original Complaint, the motions were rendered moot by the filing of the FAC and the motions relating to the FAC.

To the extent claims in the the FAC are based on the alleged taking of jewelry out of the trust before the settlor died, Robert Walter does not, on the present pleadings, allege a

factual basis establishing his standing to assert such claims. Those claims are therefore dismissed.  The court also dismisses the claims based on federal question jurisdiction.  The court denies without prejudice Defendants' motions to dismiss to the extent they argue that the court lacks diversity jurisdiction over the remaining claims, but strikes those remaining claims on the ground that the FAC violates Rules 8(a) and (e) of the Federal Rules of Civil Procedure.  Robert Walter is given leave to file a Second Amended Complaint to cure the deficiencies discussed in this order and to comply with Rule 8(a).  All other motions are denied.

The following chart summarizes the court's ruling:

| COUNT | CAUSE OF ACTION[1] | ALLEGED FACTUAL BASIS OF CLAIM | BASIS OF JURISDICTION | Disposition of Claim |
|---|---|---|---|---|
| I | Breach of Fiduciary Duty Against Elizabeth Walter and Drayson | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter<br><br>*Request to Robert Walter to waive his claims against the trustees of the trust as a condition of any distribution of assets to Robert Walter<br><br>*Concealment of breaches of trust<br><br>*Failure to inform beneficiaries and to provide requested information<br><br>*Failure to pay gift taxes<br><br>*Intent to have Patricia Walter declared incompetent<br><br>*Failure to collect rent owed to trust on real property<br><br>*Payments for care-giver services | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box<br><br>Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |

---

[1] Unless expressly noted, each Count is brought against all Defendants.

| II | Conspiracy to Breach Fiduciary Duty Against Defendants | Same as Count I | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box

Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |
| III | Aiding and Abetting Breach of Fiduciary Duty Against Temple Law Firm | *The Temple Law Firm knew of and provided substantial assistance with respect to the acts underlying Count I | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box

Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |
| IV | Civil Theft Against Elizabeth Walter and Drayson | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter | Diversity/ Supplemental | Dismissed for lack of standing |

| V | Conversion Against Elizabeth Walter and Drayson | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter | Diversity/ Supplemental | Dismissed for lack of standing |
|---|---|---|---|---|
| VI | Aiding and Abetting Civil Theft and Conversion Against Temple Law Firm | *The Temple Law Firm knew or should have known that gift taxes should have been paid on the jewelry removed from Patricia Walter's safe deposit box while she was still alive<br><br>*The Temple Law Firm knew of and conspired to facilitate the removal of the jewelry | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box<br><br>Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |
| VII | Fraudulent Misrepresen-tation and Omissions of Material Fact | *No specific identification of false representations made | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
| VIII | Aiding and Abetting Fraudulent Misrepresenta-tions Against Temple Law Firm | *The Temple Law Firm participated in a scheme to mislead Robert Walter | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
| IX | Constructive Fraud | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter | Diversity/ Supplemental | Dismissed for lack of standing |

| X | Negligent Misrepresen- tation | *Predistribution waiver of claims against trustees contained incomplete and inaccurate information | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
|---|---|---|---|---|
| XI | Unjust Enrichment | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter

*Legal fees paid to the Temple Law Firm for its participation in the various breaches of trust | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box

Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |
| XII | Emotional Distress | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter

*Predistribution waiver of claims against trustees | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box

Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |

| XIII | Conspiracy to Commit Extortion, a Form of Civil Theft, or, in the Alternative, Conspiracy to Commit Blackmail, a Form of Civil Theft | *Predistribution waiver of claims against trustees | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
|------|------|------|------|------|
| XIV | Attempted Extortion | *Predistribution waiver of claims against trustees | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
| XV | Attempted Civil Theft by Blackmail | *Predistribution waiver of claims against trustees | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
| XVI | Hobbs Act, 18 U.S.C. § 1951 | *Predistribution waiver of claims against trustees | Federal Question | Dismissed because no private right of action |
| XVII | Violation of Hawaii RICO, Haw. Rev. Stat. § 842-2(3) | *The Temple Law Firm, Drayson, and Elizabeth Walter constituted a racketeering enterprise | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |

| XVIII | RICO, 18 U.S.C. § 1962(c) | *The Temple Law Firm, Drayson, and Elizabeth Walter constituted a racketeering enterprise<br><br>*Drayson & Elizabeth Walter constituted a racketeering enterprise | Federal Question | Dismissed for failure to allege that the Temple Law Firm operated or managed the enterprise<br><br>Dismissed because allegations only indicate that the two trustees acted in their capacities as trustees and therefore were not two persons |
| XIX | Conspiracy to Violate Hawaii RICO and RICO | *The Temple Law Firm, Drayson, and Elizabeth Walter constituted a racketeering enterprise | Federal Question/ Diversity/ Supplemental | Federal claims dismissed because there can be no conspiracy if there is no underlying federal RICO violation<br><br>State claims dismissed pursuant to Rule 41(b) for violation of Rule 8 |
| XX | Aiding and Abetting a Violation of 18 U.S.C. § 1962(c), a violation of 18 U.S.C. § 2 | *The Temple Law Firm, Drayson, and Elizabeth Walter constituted a racketeering enterprise | Federal Question | Dismissed because no private right of action |

| XXI | Defamation and Libel Against Elizabeth Walter | *An email sent by Elizabeth Walter on May 5, 2004 | Diversity/ Supplemental | Dismissed pursuant to Rule 41(b) for violation of Rule 8 |
|------|------|------|------|------|
| XXII | Imposition of a Constructive Trust | *Removal of jewelry from Patricia Walter's safe deposit box while she was still alive; distribution of same to Elizabeth Walter<br><br>*Concealment of fraudulent use of trust assets<br><br>*Predistribution waiver of claims against trustees | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box<br><br>Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |
| XXIII | Tortious Interference with Trust and Trust Expectancy | *Reduction of trust assets | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box<br><br>Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |

| XXIV | Tortious Interference with Trust by Inter Vivos Transfer | *Removal of trust assets while Patricia Walter was alive, including jewelry from Patricia Walter's safe deposit box; distribution of same to Elizabeth Walter | Diversity/ Supplemental | Dismissed for lack of standing to the extent it is based on the jewelry removed from the safe deposit box<br><br>Dismissed with respect to other bases pursuant to Rule 41(b) for violation of Rule 8 |

II.      FACTUAL BACKGROUND.

Although Robert Walter's FAC is long, convoluted, and contains highly prejudicial language, this case is at heart a simple trust dispute.[2]  Patricia Ward Walter ("Patricia Walter"),

---

[2] Although the FAC does not specifically attach the various trust instruments, because many of the issues raised by the various motions to dismiss concern a factual challenge to this court's jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court examines evidence beyond the FAC without converting the motions to summary judgment motions. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings does not convert a Rule 12(b)(1) motion into a motion for summary judgment).  In this introductory section, the court discusses the various trust instruments to give this case context.  The individual motions are discussed in more detail under Rule 12(b)(1) or Rule 12(b)(6) below.

Robert Walter's mother, was the settlor of the Patricia Ward Walter Living Trust, a revocable trust created for her benefit. See Ex. A to Defendant Richard C. Drayson's Motion to Dismiss filed on December 1, 2006 (copy of Patricia Ward Walter Living Trust (Aug. 25, 1986)).

On or about December 3, 1996, the Temple Law Firm[3] prepared an amended trust agreement.  See Ex. B to Defendant Richard C. Drayson's Motion to Dismiss filed on December 1, 2006 (copy of Amendment and Restatement of Trust of Patricia Ward Walter (Dec. 3, 1996)).

On or about August 24, 2004, a different law firm, Carlsmith Ball LLP, prepared the Amendment and Second Restatement of the Patricia Ward Walter Revocable Living Trust.  See Ex. C to Defendant Richard C. Drayson's Motion to Dismiss filed on December 1, 2006 (copy of Amendment and Second Restatement of the Patricia Ward Walter Revocable Living Trust (Dec. 3, 1996)).  This amendment appointed Patricia Walter, Elizabeth Walter, her daughter, and Drayson, her C.P.A., as co-trustees of the trust. Patricia Walter retained the right to alter, amend, and revoke the trust at any time.  Upon the death or incapacity of any of the three trustees, Eugene H. Rock ("Rock") was to be appointed as a successor co-trustee.  Id.

---

[3] In this order, Elizabeth Walter, Drayson, and Temple Law Firm are referred to collectively as "Defendants."

A short form of the 2004 amendment was recorded in the Land Court of the State of Hawaii on March 28, 2005.  <u>See</u> Exhibit 1 to Richard C. Drayson's Reply Memorandum filed on February 8, 2007.  The 1986 trust, as amended in 2004, was registered in the Circuit Court of the Second Circuit, State of Hawaii on December 14, 2006.  <u>See</u> Exhibit 1 to Temple Law Firm's Motion to Dismiss First Amended Complaint filed on December 26, 2006.

Robert Walter asserts that, upon his mother's death, he became irrevocably entitled to 25% of the trust's assets, with the other 75% of the trust assets to be equally divided among his three siblings, including Elizabeth Walter.  This assertion is only partially supported by the trust documents.  Under the 2004 amendments to the trust,

> Upon the SETTLOR's death, tangible personal property located on real property owned by this Trust and used in connection with said real property shall, unless otherwise provided in this agreement, pass with the real property.  Unless otherwise provided in this Article, the TRUSTEE shall divide the SETTLOR's other tangible personal property into two parts.  The first part shall include all tangible personal property which the TRUSTEE determines should be preserved for the SETTLOR's surviving children, taking into consideration the desires of the SETTLOR's children.  The first part shall be divided among the children who survive the SETTLOR as they may agree, or, in the absence of agreement within six (6) months of the SETTLOR's death (or if any child is under a legal disability), as the TRUSTEE may determine.  The TRUSTEE shall sell (or otherwise dispose of) the assets in the second part and the proceeds shall be included in the

13

> Trust Residue.  The TRUSTEE's determination
> made pursuant to this section shall be made by
> the TRUSTEE in the TRUSTEE's sole discretion
> and shall be conclusive and binding upon all
> persons interested in SETTLOR's estate or any
> trust created hereunder.

Amendment and Second Restatement of the Patricia Ward Walter

Revocable Living Trust ¶ 4.01 (Aug. 24, 2004).  The 2004

amendments to the trust then stated that the Residuary Trust would

be divided in equal shares among Patricia Walter's four children.

See id. ¶¶ 5.01 to 5.03.

Robert Walter says that, while Patricia Walter was

alive, his sister, Elizabeth Walter, improperly removed jewelry

belonging to Patricia Walter's trust from a safe deposit box.

After Patricia Walter died, Rock became a co-trustee of

the amended trust.  Robert Walter claims that Elizabeth Walter and

Drayson (but not Rock) then committed various breaches of

fiduciary duties, including allegedly failing to rent real

property and failing to stop paying Patricia Walter's caregivers.

II.      LEGAL STANDARD.

A.   Motion to Dismiss Under Rule 12(b)(1).

A motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1) may either attack the allegations

of the complaint as insufficient to confer subject matter

jurisdiction on the court, or attack the existence of subject

matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen. Tel. &

Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When the motion

to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co., 594 F.2d at 733.  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  In re Syntex Corp. Sec. Lit., 95 F.3d 922, 926 (9th Cir. 1996).  A plaintiff has the burden of proving that jurisdiction exists.  Thornhill Publ'g Co., 594 F.2d at 733.

B.    Motion to Dismiss Under Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Chandler v. McMinnville Sch. Dist., 978 F.2d 524, 527 (9th Cir. 1992).  The court must accept as true all allegations of material fact in the complaint and must construe these facts in the light most

15

favorable to the plaintiff.  See Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1306 (9th Cir. 1992).

C.    Motion to Dismiss Under Rule 12(b)(7).

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to join a party under Rule 19.  To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings.  McShan v. Sherrill, 283 F.2d 462, 464 (9th Cir. 1960); Behrens v. Donnelly, 236 F.R.D. 509, 512 (D. Haw. 2006).

III.    ANALYSIS.

A.    Robert Walter Lacks Standing to Assert Claims Based on the Alleged Removal of Jewelry From the Trust Before Patricia Walter's Death.

This court raised in its usual prehearing inclinations the issue of whether Robert Walter has standing to assert claims based on Elizabeth Walter's alleged taking of jewelry from Patricia Walter's safe deposit box during Patricia Walter's lifetime.  See B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing.").  Standing pertains to this court's subject matter jurisdiction, meaning that it is analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

To have standing to maintain a claim, a plaintiff must demonstrate: 1) an injury in fact--an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct--an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).

Until Patricia Walter died, she had the right to alter, modify, or revoke the trust created for her benefit.  During Patricia Walter's lifetime, when Robert Walter was only a contingent beneficiary, jewelry was allegedly taken by Elizabeth Walter from Patricia Walter's safe deposit box.  Even assuming the jewelry was part of the trust, the "injury" alleged in the FAC is too speculative to support standing.  Under paragraph 4.01 of the 2004 amendments to the trust, the trustees were supposed to divide all of Patricia Walter's "tangible personal property," which included any jewelry in the trust, into two pots.  With respect to "tangible personal property" in the first pot, which included personal property that the trustees determined "should be

17

preserved for the SETTLOR's surviving children," the children, including Robert Walter, were to divide the property among themselves by agreement.  If no agreement could be reached within six months of Patricia Walter's death, then the trustees were to determine how that property would be divided.  With respect to "tangible personal property" in the second pot, the trustees were to sell or otherwise dispose of the property, with the proceeds being put into the Residuary Trust.  The trustee's determinations with respect to tangible personal property were to be "conclusive and binding upon all persons interested in SETTLOR's estate."  See Amendment and Second Restatement of the Patricia Ward Walter Revocable Living Trust ¶ 4.01 (Aug. 24, 2004).

The FAC alleges that Robert Walter is entitled to 25% of the value of the jewelry.  See FAC ¶ 57 ("The Defendant Trustees knew that if PWW died before All Jewelry was distributed, then Mr. Walter would receive 25% thereof per the ATA.") and ¶ 59 (stating that the jewelry had a value of more than $200,000.00 and that, under the 2004 trust amendments, Robert Walter was entitled to jewelry valued over $50,000.00).  Accordingly, for Robert Walter to have been injured by any Defendant, not only must the jewelry have been improperly removed from the trust, the jewelry must also have fallen into the second pot--the pot to be sold with the proceeds being put into the Residuary Trust (and with Robert Walter entitled to 25% of that).

The first problem with Robert Walter's argument is that, under paragraph 4.03 of the 2004 trust amendments, "trust property" includes the assets in the trust on the date of Patricia Walter's death.  The jewelry was not part of the "trust property" on the date of Patricia Walter's death.  Even if the jewelry should have been part of the trust assets on that date, for Robert Walter to be entitled to 25% of the value of the jewelry, the trustees would have had to determine that the jewelry should have been in the second pot.  That is, the jewelry had to be property that  "should [not have been] preserved for the SETTLOR's surviving children, taking into consideration the desires of the SETTLOR's children."  Id.  At the hearing, Robert Walter argued that the jewelry would have fallen into the first pot, which required that the children agree on distribution or, if there was no such agreement within six months of Patricia Walter's death, that the trustees conclusively decide who would get the jewelry. The FAC does nothing more than assume or speculate that the jewelry would have been put into the second pot, thereby entitling Robert Walter to 25% of the value of the jewelry.

Even if the jewelry had been put into the first pot, it is completely speculative that Robert Walter would have received any of it.  According to the trust instruments and Robert Walter at the hearing, any of the four siblings could have asked to be given the jewelry.  It appears that at least two of them, Robert

19

and Elizabeth Walter, would have so asked.  At the hearing, Robert Walter explained that, when the siblings could not decide who would get any particular piece of personal property, the trustees relied on a flip of a coin to determine who would get the property.  For Robert Walter to state an injury consistent with the FAC, he must allege that he would ultimately have been awarded at least some of the jewelry.  There is no such allegation in the FAC, and any such allegation would be based on pure speculation.

Accordingly, to the extent the FAC alleges claims arising out of the taking of jewelry out of Patricia Walter's safe deposit box, the FAC fails to allege a sufficient injury caused by Defendants to give Robert Walter standing.  Robert Walter is given leave to amend his claims based on the jewelry, assuming that he can allege claims belonging to him and for which he has standing. Any such amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure.

B.   The Federal Question Claims Are Dismissed.

Robert Walter is attempting to change the nature of this trust dispute.  He performs mental gymnastics in an attempt to assert claims that he can bring in this court.  To the extent the FAC alleges claims based on federal question jurisdiction, those claims are dismissed.

      1.    Count XVI, Asserting a Violation of the Hobbs
Act, 18 U.S.C. § 1951, is Dismissed, as There
is No Private Right of Action.

Count XVI of the FAC asserts a violation of the Hobbs Act, 18 U.S.C. § 1951, a criminal statute.  In relevant part, the Hobbs Act makes it illegal to obstruct, delay, or affect commerce by robbery or extortion.  Id.  It subjects an offender to a fine or imprisonment of not more than twenty years.  Id.  Because there is no private right of action for violations of the Hobbs Act, Count XVI is dismissed.  See Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 409 (8th Cir. 1999) ("We agree that neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action.  We hold therefore, that the district court correctly dismissed the . . . claims based on a private right of action . . . ."); Malcolm v. Anber, 2006 WL 3645308, at *7 (N.D. Cal. Dec. 12, 2006) ("Unlike RICO . . . , the Hobbs Act does not provide a civil counterpart to any criminal offense, nor can one be implied from the legislative language.  As a result, plaintiff has no private right to assert a separate cause of action for violation of the Hobbs Act." (citations omitted)).

      2.    Count XVIII, Asserting an Alleged Violation of
RICO, 18 U.S.C. § 1962(c), is Dismissed.

Count XVIII asserts a violation of RICO, 18 U.S.C. § 1962(c).  That section makes it unlawful

21

> for any person employed by or associated with
> any enterprise engaged in, or the activities
> of which affect, interstate or foreign
> commerce, to conduct or participate, directly
> or indirectly, in the conduct of such
> enterprise's affairs through a pattern of
> racketeering activity or collection of
> unlawful debt.

18 U.S.C. § 1962(c).  The factual allegations underlying Count XVIII are insufficiently pled to support the claim.  Although the FAC is extremely long, it does not actually contain allegations that the Temple Law Firm acted in some manner other than in its professional capacity.  Similarly, the FAC lacks allegations indicating that Drayson and Elizabeth Walter acted other than as trustees.  Given the length of the FAC, these allegations could have certainly been made, and it is not reasonable to ask anyone to infer from the FAC that these facts exist.  Accordingly, Count XVIII is dismissed, but Robert Walter is given leave to amend his FAC to reallege RICO violations, assuming, of course, that the facts actually support such an allegation.

> a.   To the Extent the RICO Claim is Based on
>      Actions Taken By the Temple Law Firm, the
>      FAC Fails to Allege that the Law Firm
>      <u>Operated or Managed the Enterprise.</u>

Elizabeth Walter challenges the viability of the RICO claim to the extent it is based on an enterprise made up of a trustee, like her, and the Temple Law Firm.  She moves to dismiss Count XVIII, arguing that, although attorneys are not immune from RICO liability, something more than an action taken as an attorney

is necessary to state a RICO claim under § 1962(c).  See Motion (Dec. 22, 2006) at 18 ("although attorneys are not immune from liability simply because they represent a client, legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim.").  Because the FAC fails to allege that the Temple Law Firm operated or managed the enterprise, the RICO claim is dismissed.

In Living Designs, Inc. v. E.I. DuPont de Nemours & Company, 431 F.3d 353, 361 (9th Cir. 2005), the Ninth Circuit recognized that an "enterprise," for purposes of § 1962(c), requires "the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  Living Designs ruled that a law firm can be such a distinct entity for purposes of § 1962(c). Robert Walter's total reliance on Living Designs to demonstrate that he has a valid § 1962(c) claim is misplaced, as other Ninth Circuit and Supreme Court precedent indicate that, to have such liability, something more than acting in a professional capacity is necessary.

In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court examined the language of § 1962(c).  The Court narrowly construed its language, ruling:

> In order to "participate, directly or
> indirectly, in the conduct of such
> enterprise's affairs," one must have some part
> in directing those affairs.  Of course, the

23

> word "participate" makes clear that RICO
> liability is not limited to those with primary
> responsibility for the enterprise's affairs,
> just as the phrase "directly or indirectly"
> makes clear that RICO liability is not limited
> to those with a formal position in the
> enterprise, but some part in directing the
> enterprise's affairs is required.  The
> "operation or management" test expresses this
> requirement in a formulation that is easy to
> apply.

Id. at 179 (footnote omitted).  The Supreme Court therefore held

that, "'to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs,' . . . one must participate

in the operation or management of the enterprise itself."  Id. at

185.  In so holding, the Supreme Court stated that § 1962(c)

liability is not limited to upper management, but can extend to

"lower rung participants in the enterprise who are under the

direction of upper management."  Id. at 184.

In Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993),

the Ninth Circuit examined whether, in light of Reves, an

attorney's actions were sufficient to state a claim under

§ 1962(c).  Applying the "operations or management" test, the

Ninth Circuit determined that the district court had correctly

dismissed the plaintiff's claims under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Id.  The plaintiff had alleged

a § 1962(c) violation based on an attorney's preparation of two

letters and a partnership agreement and assistance in a bankruptcy

proceeding.  Because the attorney did not "play any part in

24

directing the affairs of the enterprise" and was instead "limited to providing legal services," the Ninth Circuit determined that the plaintiff's allegations were insufficient to allege a violation under § 1962(c).

Similarly, in <u>Webster v. Omnitrition International, Inc.</u>, 79 F.3d 776, 789 (9th Cir. 1996), the Ninth Circuit determined that an attorney's "purely ministerial role as 'Assistant Secretary' in the corporation" was insufficient to impose liability on the attorney for purposes of § 1962(c).

The above Ninth Circuit cases make it clear that Count XVIII of the FAC is deficient. While apparently alleging that the RICO enterprise is the Temple Law Firm acting with trustees, Robert Walter does not sufficiently allege facts demonstrating that the Temple Law Firm satisfies the "operation or management" test. This court has searched Robert Walter's excessive FAC in an attempt to ascertain the nature of his RICO claims against the Temple Law Firm. To the extent those claims are based on an alleged failure to act, failure to disclose, or failure to advise, <u>see</u>, <u>e.g.</u>, FAC ¶ 147 (incorporated by reference into the RICO claim by paragraph 319 of the FAC), those allegations do not satisfy <u>Reves</u>'s "operation or management" test.

Robert Walter's other allegations do not indicate that the Temple Law Firm did anything beyond acting as legal counsel to the trust. Those remaining allegations vaguely allege, for

25

example, that the Temple Law Firm prepared a waiver of claims

against the trustees.  See, e.g., id. ¶ 147.  The FAC merely

alleges that the Temple Law Firm "provided substantial assistance"

to Drayson and Elizabeth Walter and "directly participated" in

committing the various alleged breaches of fiduciary duties.

Id. ¶ 163.  Participation in a breach of trust could conceivably

be limited to giving legal advice leading to a breach of trust.

Just as the attorney in Baumer had not done enough to demonstrate

that he had participated in the operation or management of the

enterprise by merely acting as counsel, the allegations of the FAC

are insufficient to allege a violation of § 1962(c).  The FAC

fails to allege that the Temple Law Firm did anything in a

capacity other than as counsel to the trust.

   In the court's usual prehearing inclinations, the court

asked Robert Walter to come to the hearing prepared to cite the

paragraphs of the FAC that he believed satisfied Reves's

"operation or management" test.  At the hearing, Robert Walter

identified two alleged actions by the Temple Law Firm.  The first,

set forth at paragraphs 40 and 45 of the FAC, concerns Elizabeth

Walter's email to Drayson and Karen Temple.  In this email,

Elizabeth Walter says that she is planning to send Robert Walter

"one copy every month of everything I do, unless Karen advises me

otherwise."  Robert Walter assumes that, because he did not

receive monthly information, Karen Temple must have advised

Elizabeth Walter not to send that information.  The FAC fails to

allege, however, that Karen Temple did anything more than advise a

client, one of the trustees of the trust.  "Whether [Temple]

rendered [her] services well or poorly, properly or improperly, is

irrelevant to the <u>Reves</u> test."  <u>Baumer</u>, 8 F.3d at 1344.

Paragraphs 40 and 45 of the FAC are insufficient to satisfy the

<u>Reves</u> test.

        Robert Walter also identified paragraphs 117, 118, and

119 at the hearing as demonstrating that the Temple Law Firm

satisfies the "operation or management" test.  These paragraphs

allege that Robert Walter sent an email to the trustees, asking

for all communications between the trustees and the Temple Law

Firm.  These paragraphs do not allege any conduct on the part of

the Temple Law Firm.

        The court therefore dismisses Count XVIII, to the extent

it is based on an enterprise consisting of the trustees and the

Temple Law Firm.[4]  Robert Walter is given leave to amend his FAC

_____

        [4] Count XVII of the FAC asserts a violation of Hawaii's
RICO statute, Haw. Rev. Stat. § 842-2(3).  Like 18 U.S.C.
§ 1962(c), that statute provides that it is unlawful "[f]or any
person employed by or associated with any enterprise to conduct
or participate in the conduct of the affairs of the enterprise
through racketeering activity or collection of an unlawful debt."
Haw. Rev. Stat. § 842-2(3).  The Hawaii Supreme Court has noted
that, in enacting section 842-2(3), the Hawaii Legislature
incorporated applicable provisions of its federal counterpart.
Accordingly, the Hawaii Supreme Court concluded that courts may
look to federal cases interpreting phrases such as "associated
with any enterprise" to determine the meaning of section 842-
2(3).  <u>State v. Bates</u>, 84 Haw. 211, 222, 933 P.2d 48, 59 (Haw.

to state a valid claim under § 1962(c), assuming that he can make allegations that satisfy <u>Reves</u>'s "operation or management test," and assuming that any such realleged claim satisfies Rule 8 of the Federal Rules of Civil Procedure.

        b.    To the Extent the RICO Claim is Based on Actions Taken By the Trustees, the FAC <u>Fails to Allege a Viable Rico Claim.</u>

In <u>Living Designs</u>, 431 F.3d at 361, the Ninth Circuit recognized that an "enterprise," for purposes of § 1962(c), requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." In its usual prehearing inclinations, the court asked Robert Walter whether he was asserting a RICO violation based on actions taken by the two trustees and whether the RICO claim should be dismissed because the trustees are not entities distinct from the trust. At the hearing, Robert Walter stated that he was asserting a RICO claim based on an enterprise consisting of the two trustees, and that the trustees committed acts outside of the trust.

Because Robert Walter did not elaborate on the factual basis of his claim, the court attempted to search the allegations of the FAC for that factual basis. It appears that the basis of

_____

1997). Given the Supreme Court's adoption of the "operation or management" test, the validity of Count XVII is in doubt. However, because Defendants did not move to dismiss Count XVII, the court does not now reach that question.

this claim is the various alleged breaches of fiduciary duties alleged in the FAC.  Even if the trustees acted poorly or incompetently when administering the trust, however, that alone would not state a RICO claim.  <u>See</u> <u>Baumer</u>, 8 F.3d at 1344. Accordingly, the court dismisses the RICO claim to the extent it is based on an enterprise consisting of Drayson and Elizabeth Walter.

Robert Walter is given leave to amend the FAC to allege a viable RICO claim based on an enterprise consisting of Drayson and Elizabeth Walter.  Any second amended complaint should clearly allege the factual basis for the claim in a manner that complies with Rule 8 of the Federal Rules of Civil Procedure, so that neither the Defendants nor this court must guess what the claim is based on.

### 3.  Count XIX, Asserting an Alleged Conspiracy to Violate RICO, is Dismissed.

To the extent Count XIX alleges a conspiracy to violate § 1962(c), it is dismissed.  Under 18 U.S.C. § 1962(d), it  is "unlawful for any person to conspire to violate" § 1962(c). Because Robert Walter's conspiracy claim relies on alleged substantive violations of § 1962(c), and because the allegations underlying Walter's § 1962(c) claim are deficient, there can be no

conspiracy to violate § 1962(d).[5]  Walter is given leave to amend his FAC to state a valid claim under § 1962(d).

    4. Count XX, Asserting a Claim for Aiding and
      Abetting a Violation of RICO, is Dismissed.

   Under 18 U.S.C. § 2, it is unlawful to aid or abet the commission of an offense against the United States.  Count XX asserts a violation of § 2 based on the alleged violation of § 1962(c).  This court has previously held that "there is no private right of action for an aiding and abetting claim under RICO."  See Order Granting Defendants' Motion to Dismiss and Striking Kilar's First Amended Rico Statement (May 21, 2004) in Kilar v. Blue Cross Blue Shield Assoc., Civil No. 03-00420 SOM/BMK (citing Pa. Ass'n of Edwards Heirs v. Rightenour, 235 F.3d 839, 844 (3d Cir. 2000)).  Contrary to Robert Walter's claim that this court's Kilar decision is currently on appeal, the Ninth Circuit affirmed the decision on July 24, 2006.  See Kilar v. Blue Cross Blue Shield Assoc., 195 Fed. Appx. 547, 549 (9th Cir. 2006) ("Kilar did not establish a prima facie case to support her RICO claims.").  Accordingly, Count XX is dismissed.

---

  [5] To the extent Count XIX is based on an alleged conspiracy to violate Haw. Rev. Stat. § 842-2(3), the court does not reach the issue of whether such a conspiracy is sufficiently alleged in the FAC, as Defendants did not move to dismiss the substantive Hawaii RICO claims.

C.   The Court Denies Dismissal of the Remaining Claims
for Lack of Diversity Jurisdiction.

Defendants next ask the court to dismiss the remaining state law claims for lack of diversity jurisdiction, arguing that, under Rule 19 of the Federal Rules of Civil Procedure, Rock, the third trustee, is a necessary and indispensable party whose joinder will destroy diversity jurisdiction.  In asserting that Rock is a necessary party, Defendants claim that Robert Walter is seeking equitable relief that requires Rock's joinder "because he will be responsible for administering any assets that are eventually recovered" to the trust.  Drayson Reply to Motion to Dismiss the FAC at 7.  Defendants also argue that, assuming Rock is a necessary party, his joinder in this case would destroy diversity jurisdiction, as he is "domiciled in Colorado." Elizabeth Walter Motion to Dismiss the FAC at 21.  Lastly, Defendants argue that Rock is an indispensable party and that his absence therefore requires dismissal of this case.  Defendants contend that Rock has a substantial interest in defending against Robert Walter's claims, that his absence will likely subject the parties to future litigation, and that Rock participated in the actions that Robert Walter alleges were breaches of fiduciary duties.

Robert Walter responds that he is not seeking equitable relief that would require Rock to oversee trust assets.  Robert Walter also says that he need not join all joint tortfeasors.

31

Because the allegations in the FAC are insufficient for this court

to determine whether Rock must be joined, the court denies

Defendants' motion for dismissal of the remaining state law claims

for lack of diversity jurisdiction.[6]

Rule 19 of the Federal Rules of Civil Procedure governs

compulsory joinder in federal district courts.  <u>EEOC v. Peabody W.

Coal Co.</u>, 400 F.3d 774, 778 (9th Cir. 2005).  In relevant part,

Rule 19(a) provides:

> A person who is subject to service of process
> and whose joinder will not deprive the court
> of jurisdiction over the subject matter of the
> action shall be joined as a party in the
> action if (1) in the person's absence complete
> relief cannot be accorded among those already
> parties, or (2) the person claims an interest
> relating to the subject of the action and is
> so situated that the disposition of the action
> in the person's absence may (i) as a practical
> matter impair or impede the person's ability
> to protect that interest or (ii) leave any of
> the persons already parties subject to a
> substantial risk of incurring double,
> multiple, or otherwise inconsistent
> obligations by reason of the claimed interest.
> If the person has not been so joined, the
> court shall order that the person be made a
> party.

Rule 19(b) provides that, if it is not feasible for the court to

join a person meeting the requirements of Rule 19(a), the court

---

[6] Given the dismissal for lack of standing of the claims based on the jewelry, the court does not here address the issue of the amount in controversy.  At the hearing on the present motions, Defendants argued that, even if the parties were not citizens of the same state, diversity jurisdiction might be lacking because more than $75,000.00 is arguably not in controversy.

> shall determine whether in equity and good
> conscience the action should proceed among the
> parties before it, or should be dismissed, the
> absent person being thus regarded as
> indispensable.  The factors to be considered
> by the court include:  first, to what extent a
> judgment rendered in the person's absence
> might be prejudicial to the person or those
> already parties; second, the extent to which,
> by protective provisions in the judgment, by
> the shaping of relief, or other measures, the
> prejudice can be lessened or avoided; third,
> whether a judgment rendered in the person's
> absence will be adequate; fourth, whether the
> plaintiff will have an adequate remedy if the
> action is dismissed for nonjoinder.

EEOC, 400 F.3d at 779 (quoting Fed. R. Civ. P. 19(b)).

The Ninth Circuit interprets Rule 19 as requiring "three successive inquiries."  Id.  "First, the court must determine whether a nonparty should be joined under Rule 19(a)."  Id.  "If the absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined."  Id.  "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed."  Id.

The first inquiry is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."  Id. at 780.  The Ninth Circuit says that, in determining whether a nonparty should be joined under Rule 19(a), the court uses "the

33

term 'necessary' to describe those 'persons to be joined if feasible.'"  <u>Id.</u> at 779.  On this point, the Ninth Circuit cautions:

> If understood in its ordinary sense, "necessary" is too strong a word, for it is still possible under Rule 19(b) for the case to proceed without the joinder of the so-called "necessary" absentee.  In fact, Rule 19(a) "defines the persons whose joinder in the action is desirable" in the interests of just adjudication.  Absentees whom it is desirable to join under Rule 19(a) are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act."

<u>Id.</u> (internal citations omitted).

Regarding the second inquiry, the Ninth Circuit notes that "Rule 19(a) sets forth three circumstances in which joinder is not feasible:  when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."  <u>Id.</u> (citing Fed. R. Civ. P. 19(a); <u>Tick v. Cohen</u>, 787 F.2d 1490, 1493 (11th Cir. 1986)).

With respect to the last inquiry of whether the case should proceed without the absentee or whether the absentee is an indispensable party such that the action must be dismissed, the Ninth Circuit says, "Rule 19 uses the word 'indispensable' only in a conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors in Rule 19(b), it is determined that in his absence it would be preferable to dismiss the action,

34

rather than to retain it." EEOC, 400 F.3d at 780. "Indispensable parties" are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." Id. (citing Shields v. Barrow, 58 U.S. 130, 139 (1854)).

            1.   Whether Rock is a Necessary Party.

        Regarding the first inquiry, which addresses whether "complete relief cannot be accorded among those already parties," Defendants argue that all of the trustees, including Rock, are necessary parties because the FAC requests relief "that affects the assets or administration of a trust." See Drayson Motion to Dismiss the FAC at 7.  Although Robert Walter expressly says he is not seeking equitable relief that would affect trust assets or property, Defendants nonetheless construe his requested relief as equitable.  Specifically, Defendants argue that Robert Walter is actually seeking an order requiring Defendants to, among other things:  (1) return "monies and properties to the Trust"; (2) "retrieve contents of the Safe Deposit Box and jewelry from Beneficiary Elizabeth Walter"; and (3) "collect rent from care givers."  Drayson Motion to Dismiss the FAC at 10; Drayson Reply to Motion to Dismiss the FAC at 7.  Defendants therefore argue that Rock is a necessary party, as he "will be responsible for

35

administering any assets that are eventually recovered." Drayson Reply to Motion to Dismiss the FAC at 7-8.

> Robert Walter responds:
>
>> [Robert Walter] is seeking tort damages, and tort damages only, in this action. He did not file this action in a derivative or representative capacity, and he has not applied to this Court for interpretation of the Trust or [his] rights thereunder. [He] is not seeking return of Trust assets; rather, he is seeking damages against the Defendants for their acts and omissions. Had [Robert Walter] filed a derivative claim on behalf of the Trust or stated that he was seeking return of Trust assets to himself or the Trust, then the Defendants might have a point. However, [Robert Walter] is content in holding the Defendants individually responsible in damages for their acts and omissions.

Supp. Opp. at 7. Robert Walter says that, because he is not seeking equitable relief that would affect trust assets or property, Rock is not a necessary party. Supp. Opp. at 10.

The parties do not dispute the general rule that, "in suits respecting trust property brought either by or against trustees[,] the cestuis que trust as well as the trustees are necessary parties." Lucas v. Lucas, 20 Haw. 433, at 441-42 (Haw. Terr. 1911). Indeed, Robert Walter notes that, if he were "seeking return of Trust assets to himself or the Trust, then Defendants might have a point" in saying that Rock is a necessary party. Rather than dispute the general rule, the parties disagree on whether "trust property," or trust assets, will be affected in this action. See id. Defendants assert that Robert Walter

36

actually seeks to have money or property returned to the trust, which would affect trust assets, but Robert Walter points to the FAC in arguing that he seeks no such return of assets to the trust or to himself and does not seek equitable relief in any form.

"Traditionally, the remedies of the beneficiary of a trust against the trustee have been almost exclusively within the jurisdiction of equity." Jefferson Nat'l Bank of Miami Beach v. Cent. Nat'l Bank in Chicago, 700 F.2d 1143, 1149 (7th Cir. 1983) ("Jefferson") (citing Restatement (Second) of Trusts § 197 (1959) ("Except as stated in § 198, the remedies of a beneficiary against the trustee are exclusively equitable.")); see also Brown v. United Miss. Bank, N.A., 78 F.3d 382, 387 (8th Cir. 1996) ("Courts of equity generally have exclusive jurisdiction over actions against a trustee for breach of trust, as they are equitable actions."); Dixon v. Northwestern Nat'l Bank of Minneapolis, 297 F. Supp. 485, 488 (D. Minn. 1969) ("It is of course true that generally the remedies of the beneficiary against the trustee are exclusively equitable."); Carstens v. Cent. Nat'l Bank & Trust Co. of Des Moines, 461 N.W.2d 331, 333 (Iowa 1990) ("Generally, the remedies of a beneficiary against the trustee are exclusively equitable."); Kann v. Kann, 690 A.2d 509, 516 (Md. App. 1997) ("Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity.").

However, "[i]f a trustee is under a duty to pay money immediately to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment." Jefferson, 700 F.2d at 1149 (quoting Restatement (Second) of Trusts § 198 (1959) ("If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.")); see also Brown, 78 F.3d at 387 ("Such actions are legal and not equitable, however, if the beneficiaries are entitled to recover money arising out of a breach of trust directly upon obtaining a judgment against the trustee."); Carstens, 461 N.W.2d at 333 (noting that a "beneficiary of a trust may claim a legal remedy by an action at law if . . . the trustee is under a duty to pay money immediately and unconditionally to the beneficiary"); Clark v. U.S. Nat'l Bank of Or., 503 P.2d 502, 505 n.2 (Or. App. 1972) ("Where a trustee has wrongfully paid out trust funds and the plaintiff is entitled to the immediate possession of the trust corpus, the plaintiff has a right of action at law."). Stated differently, an "action for damages for a breach of trust, as distinguished from an indebtedness arising out of a breach of trust, remains an equitable question." Brown, 78 F.3d at 382.

Several courts have discussed whether a beneficiary claiming breach of fiduciary duty by a trustee may recover damages

at law.  For example, in <u>Dixon</u>, 297 F. Supp. at 487, beneficiaries
of an employees' profit sharing trust brought suit against the
bank trustee, alleging that the trustee "improperly used trust
funds to buy and invest in worthless preferred stock."  Under the
trust, the beneficiaries received certain cash and stock
distributions upon their termination of employment.  <u>Id.</u>  The
beneficiaries sought compensatory and punitive damages, arguing
that the trustee purchased the stock "knowing it was valueless or
nearly so . . . with the intent to benefit directly from such
purchase."  <u>Id.</u>  Upon the trustee's motion to quash the
beneficiaries' demand for jury trial, the district court noted
that, despite the general rule that a beneficiary's remedy against
a trustee is "exclusively equitable," a beneficiary may maintain a
suit for damages against a trustee if "the trustee is under a duty
to pay money immediately and unconditionally to the beneficiary."
<u>Id.</u> at 488.  Because the beneficiaries had terminated their
employment and ceased their participation in the trust fund, and
because an order for distribution had already been made, the court
concluded that the suit was "for immediate payment on an
indebtedness arising out of a breach of trust."  <u>Id.</u>

> The <u>Dixon</u> court noted:
>
> This case is thus distinguishable from the
> more normal situation where the beneficiaries
> are suing in equity to compel the trustee to
> redress a breach of trust by refunding to the
> trust estate and where there is no right to a
> jury trial.  In the latter situation, a jury

> cannot award monetary relief, or any other
> relief, because the trustee is under no
> obligation to make immediate payment.  Rather
> equitable relief compelling the trustee to
> restore the corpus must be decreed.  However,
> once the beneficiaries have a vested right to
> payment or when the trustee is obligated under
> the terms of the trust to make distribution to
> the beneficiaries, then the beneficiaries are
> entitled to immediate payment and may maintain
> an action at law against the trustee.

Id. at 489.  The court held that the beneficiaries properly sought

legal, rather than equitable, relief and were entitled to a jury

trial.  Id.

The Seventh Circuit applied the Dixon court's analysis

in Jefferson, 700 F.2d at 1145, a case brought by the personal

representative of the estate of Philip Litner ("Litner") against

the trustee of Litner's revocable inter vivos trust for breach of

fiduciary duty.  The trustee moved to strike the jury demand,

arguing that "the action was inherently and exclusively of an

equitable nature and properly tried to a court."  Id. at 1148-49.

After a jury trial, the trustee appealed, arguing that the

district court erred in denying its motion to strike the jury

demand.  Id. at 1149.

On appeal, the Seventh Circuit noted that, although "the

remedies of the beneficiary of a trust against the trustee have

been almost exclusively within the jurisdiction of equity," a

beneficiary may bring a suit for legal damages if the "trustee is

under a duty to pay money immediately to the beneficiary."  Id.

Because the suit did not "involve the administration of an existing and continuing trust" and because the personal representative sought "the immediate payment of money damages to the estate of a beneficiary of a previously revoked trust," the court characterized the action as "a suit for immediate payment on an indebtedness arising out of a breach of trust."  Id. at 1149-50.  Concluding that "the instant action is of the type that a beneficiary may maintain at law against a trustee," the Seventh Circuit affirmed the district court's denial of the trustee's motion to strike the jury demand.  Id. at 1149.

In Counts I through III, Robert Walter asserts that Defendants breached, conspired to breach, and aided and abetted the breach of their fiduciary duties.  With respect to each of these Counts, Robert Walter prays for "compensatory damages, punitive damages, consequential damages, treble damages . . . , exemplary damages, [and] statutory damages."[7]  FAC Prayer for Relief ¶ A.

Notwithstanding Robert Walter's repeated statements that he seeks "tort damages only," see, e.g., Supp. Opp. at 7; Opp. at 11-12, 25-30, he may recover such damages for breach of fiduciary duties only if Defendants are "under a duty to pay money immediately and unconditionally to" him.  See Brown, 78 F.3d at

---

[7] Although the FAC prays for restitution, Robert Walter withdrew his request for restitution at the hearing on these motions.

387; <u>Jefferson</u>, 700 F.2d at 1149; <u>Carstens</u>, 461 N.W.2d at 333;

<u>Clark</u>, 503 P.2d at 505 n.2.  At the hearing on these motions,

Robert Walter explained that Defendants immediately and

unconditionally owe him a portion of (1) money that was allegedly

paid to Patricia Walter's caregivers after her death and (2) the

value of jewelry that Elizabeth Walter allegedly took from the

trust.  Robert Walter argued that, had that jewelry and money

stayed in the trust, he would have received a portion of their

value six months after Patricia Walter died.  Robert Walter

pointed the court to section 4.03 of the Amendment and Second

Restatement of the Patricia Ward Walter Revocable Living Trust

("Amended Trust Instrument") (Exhibit C attached to Drayson's

motion to dismiss the original complaint), which governs the

distribution of tangible personal property.  Section 4.03 states,

"For purposes of this section, 'trust property' shall include the

assets of the trust estate on the date of the SETTLOR's death and

any property distributed to this Trust from the SETTLOR's probate

estate, any other trust established by the SETTLOR, or received by

this Trust by reason of the SETTLOR's death."  The Amended Trust

Instrument provides that "tangible personal property which the

TRUSTEE determines should be preserved for the SETTLOR's surviving

children . . . shall be divided among the children who survive the

SETTLOR as they may agree, or, in the absence of agreement within

six (6) months of the SETTLOR's death (or if any child is under a

legal disability), as the TRUSTEE may determine." Id. ¶4.01.  The
remaining tangible personal property was to be sold and included
in the "Trust Residue."  Id.

          The court is not convinced that the Amended Trust
Instrument supports Robert Walter's argument that he is
immediately and unconditionally owed money that was paid to
caregivers or the value of jewelry allegedly taken by Elizabeth.
Because section 4.03 and the entire Article IV of the Amended
Trust Agreement concern the distribution of "tangible personal
property," it appears that any money used to pay for caregiver
services was not governed by that section.  Further, section 4.03
is concerned with "assets of the trust estate on the date of
SETTLOR's death."  Because Elizabeth is alleged to have taken the
jewelry while Patricia Walter was still alive, the jewelry might
not have been "trust property" to be distributed pursuant to
section 4.03.  Moreover, the court has determined that, as alleged
in the FAC, Robert Walter lacks standing to assert claims based on
the jewelry.  Contrary to Robert Walter's assertions, section 4.03
of the Amended Trust Instrument does not show that Defendants are
"under a duty to pay money immediately and unconditionally to"
him.

          It is unclear whether Robert Walter is seeking
(a) "damages for a breach of trust," which would constitute
equitable relief affecting trust assets, or (b) payment of "an

indebtedness arising out of a breach of trust" that is immediately and unconditionally due to him, which would constitute legal damages not affecting trust assets.  See Brown, 78 F.3d at 387-88; Dixon, 297 F. Supp. at 488-89.  Although the allegations in the FAC raise questions as to whether Robert Walter may properly seek legal damages, the court is unable, without more, to determine whether Robert Walter properly seeks legal damages, or whether he is actually seeking equitable relief that will affect trust property and require Rock's joinder as a necessary party.  The court therefore declines to address Defendants' remaining arguments for Rock's joinder, which go to the second and third inquiries under Rule 19.  The court is allowing Robert Walter to amend his complaint, and he may reassert his breach of fiduciary duty claims and any corresponding relief to clarify for the court whether he properly seeks legal damages that do not require Rock's joinder.[8]

---

[8] Defendants also argue that this court lacks jurisdiction over certain claims in light of the probate exception, which they say "disables a Federal Court from exercising diversity jurisdiction."  Because the applicability of the exception depends on the exact bases of Robert Walter's claims, and because the FAC is long and convoluted, making it difficult to ascertain the bases of each claim, the court does not now analyze the probate exception's application to the asserted claims.  Robert Walter may amend the FAC, and Defendants may reassert the exception's applicability to his amended claims.

D.   The Remainder of the FAC is Stricken Because it
Violates Rule 8.

Drayson also moves to strike the FAC, and the Temple Law

Firm joins in that request.  Drayson says that the 68-page, 364-

paragraph FAC is unduly burdensome and in violation of Rule 8(a)

of the Federal Rules of Civil Procedure.  The court agrees.

Rule 8(a) of the Federal Rules of Civil Procedure

requires a plaintiff's complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to

relief."  A plaintiff's complaint satisfies the requirements of

Rule 8(a) when it provides the defendant with "fair notice of what

the plaintiff's claim is and the grounds upon which it rests."

Conley v. Gibson, 355 U.S. 41, 47 (1957); accord Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 512 (2002).  Robert Walter's FAC is

definitely not "a short and plain statement of the claim showing

that the pleader is entitled to relief."  The FAC also violates

Rule 8(e)(1) of the Federal Rules of Civil procedure, as it is not

"simple, concise, and direct."  To the contrary, it is

argumentative, prolix, redundant, and confusing, and contains

seemingly irrelevant allegations.

Because the FAC violates Rules 8(a) and (e), it may be

stricken pursuant to Rule 41(b) of the Federal Rules of Civil

Procedure, which allows the involuntary dismissal of a complaint

when a plaintiff fails to comply with the Federal Rules of Civil

Procedure.  See McHenry v. Renne, 84 F.3d 1172, 1178-80 (9th Cir.

1996) (affirming dismissal of complaint that violated Rule 8);

Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir.

1981) ("A complaint which fails to comply with rules 8(a) and 8(e)

may be dismissed with prejudice pursuant to rule 41(b).").

In McHenry, the Ninth Circuit discussed several reasons

for dismissing complaints that violate Rule 8:

> If the pleading contains prolix evidentiary
> averments, largely irrelevant or of slight
> relevance, rather than clear and concise
> averments stating which defendants are liable
> to plaintiffs for which wrongs, based on the
> evidence, then this purpose is defeated. Only
> by months or years of discovery and motions
> can each defendant find out what he is being
> sued for.  The expense and burden of such
> litigation promotes settlements based on the
> anticipated litigation expense rather than
> protecting immunity from suit.

McHenry, 84 F.3d at 1178.  Of additional concern is the effect

that a prolix complaint has on the court and the parties.

> Prolix, confusing complaints such as the ones
> plaintiffs filed in this case impose unfair
> burdens on litigants and judges.  As a
> practical matter, the judge and opposing
> counsel, in order to perform their
> responsibilities, cannot use a complaint such
> as the one plaintiffs filed, and must prepare
> outlines to determine who is being sued for
> what.  Defendants are then put at risk that
> their outline differs from the judge's, that
> plaintiffs will surprise them with something
> new at trial which they reasonably did not
> understand to be in the case at all, and that
> res judicata effects of settlement or judgment
> will be different from what they reasonably
> expected.  The rights of the defendants to be
> free from costly and harassing litigation must
> be considered.  The judge wastes half a day in
> chambers preparing the "short and plain

> statement" which Rule 8 obligated plaintiffs
> to submit.  He then must manage the litigation
> without knowing what claims are made against
> whom.  This leads to discovery disputes and
> lengthy trials, prejudicing litigants in other
> case who follow the rules, as well as
> defendants in the case in which the prolix
> pleading is filed.

Id. at 1179-80 (alterations, citations, and quotations omitted).

All of the Ninth Circuit's concerns in McHenry are applicable to Robert Walter's FAC.  This court has wasted valuable time attempting to understand and preparing an outline of the claims in this case.  As in McHenry, the FAC "is argumentative, prolix, replete with redundancy, and largely irrelevant."  Id. at 1177.  The court's time could have easily been spent on other cases.  Forcing Defendants to answer and litigate the FAC would be unduly burdensome.  The FAC is stricken and dismissed pursuant to Rule 41(b).

Robert Walter is given leave to file a Second Amended Complaint that complies with Rule 8.  Robert Walter is an attorney, and there is no reason to excuse him from following the Ninth Circuit's guidance in McHenry as to the allegations and assertions that comply with Rule 8.  The heightened pleading standard for Robert Walter's fraud claims does not allow him to disregard Rule 8's requirement of simplicity, directness, and clarity.  Id. at 1178.  Any amended complaint must be filed no later than March 9, 2007.  If Walter fails to comply with Rule 8 as discussed in McHenry, Walter may be subject to sanctions,

47

including but not limited to dismissal of his complaint with
prejudice and monetary sanctions.[9]

IV.      CONCLUSION.

In light of the foregoing, the court dismisses the FAC,
but gives Robert Walter leave to file a Second Amended Complaint
no later than March 9, 2007.  If Robert Walter does not file a
Second Amended Complaint by that date, this action will
automatically be dismissed.  Should the court determine that it
lacks both federal question and diversity jurisdiction, it is
highly unlikely that the court will exercise supplemental
jurisdiction over any remaining state law claims.

Given the court's dismissal of the FAC, Robert Walter's
ex parte motion for leave to file an amended RICO statement is
moot.  Although that ex parte motion is currently set for a
hearing at 9:30 a.m. before Magistrate Judge Chang on February 26,
2007, this court denies it as moot.

_____

[9] Because the court does not rely on those portions of
Drayson's and Elizabeth Walter's memoranda that Robert Walter
moves to strike, the court denies those motions as moot.

This order disposes of all motions listed in the third paragraph of this order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 23, 2007.

_____
Susan Oki Mollway
United States District Judge

**Walter v. Drayson, et al.**, Civ. No. 06-00568 SOM/KSC; ORDER DISMISSING FIRST
AMENDED COMPLAINT.