IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ROBERT W. WALTER,           )    Civ. No. 06-00568 SOM/KSC
                            )
          Plaintiff,        )
                            )    ORDER GRANTING DEFENDANTS'
     vs.                    )    MOTIONS TO DISMISS
                            )
RICHARD C. DRAYSON, et al., )
                            )
          Defendants.       )
_____)

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

          Faced with a motion to dismiss for failure to state a
claim, a court typically accepts as true the allegations of a
complaint.  But that is not required when the allegations are
mere conclusions, contain unwarranted deductions, or make
unreasonable inferences.  That is what occurs in the federal
claims raised here, and they fail as a result.

          This case, at heart, is a dispute between a brother and
sister about how to split trust assets left to them and their
siblings by their late mother.  This dispute cannot be shoehorned
into the Racketeer Influenced and Corrupt Organizations Act
("RICO"), despite tireless efforts by Plaintiff Robert W. Walter
("Walter").  Stripped of implausible RICO allegations and lacking
diversity jurisdiction, this action is a matter of state law over
which this court declines to exercise supplemental jurisdiction.

I.        FACTUAL BACKGROUND

          On February 26, 2007, this court dismissed the First
Amended Complaint ("FAC"), with leave to amend.  A detailed

discussion of the facts underlying this action is contained in the court's earlier dismissal order.  See Walter v. Drayson, 2007 WL 641413 (D. Haw. Feb. 26, 2007).  In summary, this case concerns the disposition of the assets in the Patricia Ward Walter Living Trust, a revocable trust that Walter's mother, Patricia Walter, created for her benefit.

Patricia Walter lived on Maui and retained the Maui law firm of Bodden & Temple LLC, to represent her in various trust matters.  Karen Temple, an attorney with that law firm, was active in providing legal service to the trustees.

In 2004, a different Hawaii law firm prepared an Amendment and Second Restatement of the Patricia Ward Walter Revocable Living Trust, naming as trustees Patricia Walter, Patricia Walter's daughter Elizabeth Walter, and Richard C. Drayson ("Drayson"), Patricia Walter's C.P.A.  Patricia Walter retained the right to alter, amend, and revoke the trust at any time.  When Patricia Walter died in 2005, Eugene H. Rock ("Rock") became a successor trustee, joining Elizabeth Walter and Drayson. Id.

Patricia Walter left four children.  In this action, Robert Walter asserts that, upon his mother's death, he became irrevocably entitled to 25% of the trust's assets, with the other 75% of the trust assets to be equally divided among his three siblings.  Robert Walter says that, while Patricia Walter was

2

incapacitated by a series of strokes, his sister, Elizabeth Walter, improperly removed jewelry belonging to Patricia Walter's trust from a safe deposit box.  Robert Walter also claims that, after Patricia Walter's death, Elizabeth Walter and Drayson (but not Rock) committed various breaches of fiduciary duties, including allegedly failing to rent real property and failing to stop paying Patricia Walter's caregivers.

Robert Walter is a Colorado attorney representing himself in this lawsuit, in which he sues Karen Temple and her law firm (collectively, "Temple Defendants"), Elizabeth Walter, and Drayson.[1]  Defendants now move to dismiss the Second Amended Complaint ("SAC").

In the SAC, Walter asserts two RICO claims, under 18 U.S.C. §§ 1962(c) and (d), as well as state law claims for, among other things, breach of fiduciary duty.  The court here dismisses the SAC in its entirety.  The reasons for this dismissal are set forth in detail in the following pages but can be summarized as resulting from a combination of (1) Walter's failure to state a federal claim, and (2) the absence of some other jurisdictional basis, such as diversity jurisdiction, that requires this court to exercise jurisdiction over this action.  As explained below, this court recognizes that, as it had federal question

---

[1] Drayson, Elizabeth Walter, and the Temple Defendants are collectively referred to as "Defendants."

jurisdiction at the outset of this action, it has discretion to exercise supplemental jurisdiction over the state law claims even after dismissing the federal RICO claims and determining that there is no diversity jurisdiction.  The court declines to exercise supplemental jurisdiction over the state law claims.

II.      FAILURE TO STATE A FEDERAL CLAIM.

         A.   Motion to Dismiss Under Rule 12(b)(6).

         Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a complaint when it fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

         On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light

most favorable to the nonmoving party.  Fed'n of African Am.
Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.
1996).  Walter'S SAC, however, calls into play the important
principle that conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient
to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988;
Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of
Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); Syntex Corp.
Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Additionally, the
court need not accept as true allegations that contradict matters
properly subject to judicial notice or allegations contradicting
the exhibits attached to the complaint.  Sprewell, 266 F.3d at
988.  In other words, to survive a Rule 12(b)(6) motion to
dismiss, "factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all
the allegations in the complaint are true even if doubtful in
fact."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)
(citations and internal quotations omitted).

          "While a complaint attacked by a Rule 12(b)(6) motion
to dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitlement to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Id. at 1964 (citations and

internal quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face."  Id. at 1973.

It is precisely because Walter does not plead a federal RICO claim that is "plausible on its face" and instead relies on conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences that his RICO claims fail.

B.   Federal Claims.

The SAC contains two counts giving rise to federal question jurisdiction under 28 U.S.C. § 1331.  Count XVI asserts a RICO violation under 18 U.S.C. § 1962(c).  Count XVII asserts, in part, a conspiracy to violate RICO under 18 U.S.C. § 1962(d). Neither count states a viable claim.

1.   Count XVI, Asserting an Alleged RICO Violation under 18 U.S.C. § 1962(c), is Dismissed.

Count XVI asserts a RICO violation under 18 U.S.C. § 1962(c), which makes it unlawful

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To prevail on his civil RICO claim, Walter must therefore prove that Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

predicate acts) and, additionally, must establish that (5) the
defendant caused injury to Walter's business or property.  See
Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086-87 (9th
Cir. 2002); Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996);
see also 18 U.S.C. §§ 1962(c), 1964(c).

The factual allegations supporting Count XVI of the SAC
do not support the RICO claim.  Although the SAC contains
allegations that the Temple Defendants acted in some manner other
than in their professional capacity, this court need not accept
those allegations as true on this Rule 12(b)(6) motion to dismiss
because they are "conclusory, unwarranted deductions of fact, or
unreasonable inferences."  Sprewell, 266 F.3d at 988.  The SAC's
critical failing is that it fails to properly allege that the
Temple Defendants operated or managed the alleged RICO
enterprise.

In Living Designs, Inc. v. E.I. DuPont de Nemours &
Company, 431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 126 S.
Ct. 2861 (2006), the Ninth Circuit recognized that an
"enterprise," for purposes of § 1962(c), requires "the existence
of two distinct entities:  (1) a 'person'; and (2) an
'enterprise' that is not simply the same 'person' referred to by
a different name."  While Living Designs held that a law firm may
be such a distinct entity for purposes of § 1962(c), that is so

only if the law firm did something more than act in a professional capacity.

Living Designs is part of a long line of cases examining what it means to be part of a RICO enterprise. In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court narrowly construed the language of § 1962(c):

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

Id. at 179 (footnote omitted). The Supreme Court therefore held that, "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs' . . . one must participate in the operation or management of the enterprise itself." Id. at 185. Liability under § 1962(c) is not limited to upper management, but can extend to "lower rung participants in the enterprise who are under the direction of upper management." Id. at 184.

In Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993), the Ninth Circuit examined whether, in light of Reves, an

8

attorney's actions were sufficient to state a claim under § 1962(c).  Applying the "operations or management" test, the Ninth Circuit determined that the district court had correctly dismissed the plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Id.  The plaintiff had alleged a § 1962(c) violation based on an attorney's preparation of two letters and a partnership agreement and assistance in a bankruptcy proceeding.  Because the attorney did not "play any part in directing the affairs of the enterprise" and was instead "limited to providing legal services," the Ninth Circuit determined that the plaintiff's allegations were insufficient to allege a violation under § 1962(c).  Id.

Baumer makes it clear that Count XVI of the SAC fails to state a viable RICO claim.  Walter alleges an associated-in-fact enterprise for his civil RICO claim consisting of the trustees and their attorney(s).[2]  See Odom v. Microsoft, 486 F.3d

---

[2] To the extent the SAC's allegations could be read as alleging a RICO enterprise between only Elizabeth Walter and Drayson, Walter has clarified that he is not asserting such an enterprise.  On page 5 of Walter's opposition to Elizabeth Walter's Motion to Dismiss, Walter incorporates by reference his opposition to Drayson's Motion to Dismiss.  In that opposition, Walter states, "The SAC alleges that all of the Defendants comprised an association-in-fact Enterprise, not that the Individual Defendants constituted an Enterprise."  See Opp. to Drayson's Motion to Dismiss at 16.  Walter defines "Individual Defendants" in his opposition to the Temple Defendants' Motion to Dismiss, stating that "'Individual Defendants' refer[] to Defendants Richard C. Drayson and Elizabeth Walter."  Opp. to Temple Defendants' Motion to Dismiss at 1.

541, 551-52 (9th Cir. 2007) (en banc).  But Walter needs more.
To maintain his RICO claim against the Temple Defendants, he must
allege facts demonstrating that the Temple Defendants
participated in the conduct of the enterprise.  That is, Walter
must satisfy the "operation or management" test with respect to
the Temple Defendants.  This Walter does not do.

       The SAC and attached RICO case statement, which is
incorporated into the SAC by its paragraph 129, are 109 pages
long in combination (not including the attached exhibits).
Despite this length, Walter alleges only two facts supporting his
contention that the Temple Defendants operated or managed the
enterprise.  First, he contends that Karen Temple told Elizabeth
Walter not to send monthly reports to Walter.  Second, he says
that Karen Temple refused to send him information that he
requested.  These allegations do not satisfy the "operation or
management" test.

       This court previously dismissed Walter's RICO claim
because the FAC failed to allege that the Temple Defendants had
done anything in a capacity other than as counsel for the
trustees.  The FAC thus did not properly allege a RICO
enterprise.  Walter attempts to correct these deficiencies in the
SAC by alleging that Karen Temple did not act as counsel to the
trust when she took certain actions.  Certainly there will be
cases in which allegations like that will suffice to defeat a

Rule 12(b)(6) motion to dismiss.  Here, however, the SAC itself

indicates that the Temple Defendants were acting as counsel to

the trust, notwithstanding Walter's assertions to the contrary.

(a)  The Monthly Reports.

Walter's first contention that the Temple Defendants

operated or managed the alleged enterprise arises out of what

Walter calls the "Conspiracy E-Mail."  Walter alleges that, in

this email, Elizabeth Walter told Drayson, Karen Temple, and two

others that Elizabeth Walter planned to send Walter and his

brother monthly copies "of everything I do, unless Karen [Temple]

advises me otherwise."  SAC ¶¶ 34, 40; Ex. A to SAC (copy of the

email).  Walter alleges that he and his brother "never received

such monthly documentary information because Defendant [Karen]

Temple told [Elizabeth Walter] not to send it."  SAC ¶ 41.  The

court accepts as true Walter's allegation that Karen Temple gave

such advice.  But Walter goes further and alleges that this

advice demonstrates that Karen Temple was directing the

enterprise's affairs.  SAC ¶ 44.  Walter claims that what Karen

Temple told Elizabeth Walter concerning the monthly documentation

> was not legal advice to a client and did not
> constitute legal services, because (1) there
> was no legal duty for [Elizabeth Walter] to
> send monthly reports to the Beneficiaries;
> rather these were strictly voluntary reports,
> (2) the Conspiracy E-Mail was addressed to
> non-clients of the Temple Defendants . . . ,
> and (3) because non-clients were part of this
> exchange of e-mails, no work product or other
> attorney-client privilege attached to the e-

11

> mail exchange, the hallmark of advice to a
> client.

Id. ¶ 42.

Walter's allegation that Karen Temple responded to the so-called "Conspiracy E-Mail" in her individual capacity, rather than as counsel to the trustees, is based on precisely the kind of conclusion, unwarranted deduction of fact, and unreasonable inference that the Ninth Circuit, in Sprewell, cautioned that a court need not accept as true.  See Sprewell, 266 F.3d at 988. The SAC alleges that the Temple Defendants acted as counsel to the trustees of Patricia Walter's trust at the time Elizabeth Walter, one of the trustees, sent the "Conspiracy E-Mail."  SAC ¶ 36.  The contention that Karen Temple must have been acting as an individual, rather than as counsel to the trustees, when she told Elizabeth Walter not to send the monthly reports is not supported by any factual allegation.  Instead, Walter bases that allegation on the conclusion that a lawyer's advice on something a client is not required to do is necessarily beyond the scope of legal services.  Walter then deduces or infers that Karen Temple's alleged advice concerning something Elizabeth Walter was not required to do must have fallen outside the provision of legal services.  The problem, of course, is that Walter is wrong with respect to the underlying conclusion about what advice falls outside the provision of legal services.  Whether Elizabeth Walter had a duty to send beneficiaries, including Walter,

monthly reports is irrelevant to the issue of whether Karen
Temple was providing legal advice to Elizabeth Walter when Karen
Temple allegedly responded to Elizabeth Walter's request.

It is easy to think of examples of legal advice that
involves telling a client not to do something the client has no
obligation to do.  In a criminal case, a defendant's attorney may
counsel a defendant not to take a polygraph test, or not to
testify.  The defendant has no obligation to submit to a
polygraph test or to take the stand at trial.  Defense counsel
does not act on counsel's own behalf by reason of advising the
defendant against doing something the law does not require.
Instead, that is exactly the type of legal advice that defense
attorneys in criminal cases routinely give as part of defending
their clients.  If those attorneys are court-appointed counsel,
then they are paid from public coffers for providing such advice.
They could hardly be said to be acting in their individual
capacities.

In a civil case, an alleged tortfeasor may want to
apologize to an injured party, and the tortfeasor's attorney may
counsel against that.  The alleged tortfeasor has no legal
obligation to apologize, but that does not take the attorney's
advice outside the scope of legal advice.  Similarly, an employer
may consider giving a disgruntled employee a raise that the
employee is not entitled to have.  The employer's counsel does

13

not act in a personal capacity by advising against the optional raise.  In short, Walter is clearly wrong in positing that advice that addresses what a client is not obligated by law to do is somehow personal advice.

Certainly one could argue with the wisdom of the advice any attorney gives, and Walter may well disagree with what Karen Temple may have told her client.  That disagreement, however, does not transform Karen Temple's advice into something outside the provision of legal services.  This court need not accept as true Walter's conclusory allegations of law, especially when, as here, they are wrong.  See Sprewell, 266 F.3d at 988.  Nor must this court accept as true Walter's unreasonable deduction and inference that, because Elizabeth Walter had no duty to provide monthly reports, Karen Temple must not have been providing legal advice when she allegedly told her client, Elizabeth Walter, not to send the reports.  See id.

Walter is similarly unreasonable in concluding, deducing, and inferring that Karen Temple was not acting in her capacity as the trustees' counsel because Karen Walter's response may have been sent to non-clients.  Walter says that, because the attorney-client and work-product privileges were waived, Karen Temple could not possibly have been providing legal services. The court notes initially that Walter is incorrect in assuming that the work product doctrine somehow becomes wholly

inapplicable because an attorney provides information to someone other than a client.  While such sharing may well mean that the material is no longer confidential, it does not necessarily follow that all work product rights are thereby lost.  An attorney who consults with an expert witness who will not testify at trial, for example, is having an unprivileged communication that still has work product protection.  Even assuming that Karen Temple said something to Elizabeth Walter that was not covered by the attorney-client privilege or work product doctrine, that simply does not mean that Karen Temple's alleged statement fell outside the nature of legal services.

Again, examples abound that show the fallacy in Walter's deduction.  Litigators routinely file briefs that are part of the public record, and present oral arguments that any member of the public may hear.  These briefs and arguments are clearly prepared and presented in the course of providing legal services, though clearly not privileged.  Attorneys routinely send letters to opposing counsel that articulate their clients' positions, make settlement demands, or schedule depositions.  Such letters are a necessary and legitimate part of providing legal services, though unprivileged.  Walter is once again wrong in concluding that unprivileged communications must be personal, rather than professional.

15

In <u>Baumer</u>, the Ninth Circuit made it clear that an attorney does not operate or manage an enterprise if the attorney's actions are "limited to providing legal services." <u>Baumer</u>, 8 F.3d at 1344.  Some of the services provided by the attorney in that case were not covered by the attorney-client privilege, yet fell within "legal services."  Walter's mere assertion that a matter goes beyond the provision of legal services because it is unprivileged is unwarranted and does not make it so.

Walter additionally contends that Karen Temple could not have been acting as an attorney in responding to the "Conspiracy E-Mail" because that email contained Elizabeth Walter's concern that, to protect Patricia Walter from Walter and his brother, the "only option [was] to have [Patricia Walter] declared incompetent."  SAC ¶ 43; Ex. A to SAC.  Walter alleges that the only way the Temple Defendants could have provided legal services would have been if they had advised Patricia Walter of this possible plan, withdrawn as counsel to the trustees, and advised all of the beneficiaries of this possible plan.  SAC ¶ 43.  Again, Walter's allegation that Karen Temple must have been acting in her personal capacity is based on mere conclusions, unwarranted deductions of facts, and unreasonable inferences.

Even assuming Walter is correct in stating what Temple Defendants were supposed to do, a matter this court does not here rule on, he is incorrect in concluding that Temple Defendants were necessarily acting other than as counsel.  Walter appears to be charging the Temple Defendants with unethical actions or malpractice.  But a lawyer does not act in a personal capacity just by acting unethically or committing malpractice.  It makes no more sense to claim that such a lawyer is acting in a personal capacity than it does to claim that a doctor who malpractices by amputating the wrong limb was not acting as a doctor and therefore must have participated in a RICO enterprise.  As the Temple Defendants were providing Elizabeth Walter legal advice, the SAC fails to state a viable RICO claim because it fails to properly allege that the Temple Defendants operated or managed the enterprise.  <u>See</u> <u>Baumer</u>, 8 F.3d at 1344.

(b)   <u>Refusal to Send Information</u>

Walter also alleges in paragraphs 122 to 124 of the SAC that Karen Temple acted in her personal capacity, not as counsel, in withholding from him information not protected by any attorney-client privilege.  Paragraph 121 of the SAC alleges that Walter sent Karen Temple, the trustees' attorney, an email requesting certain documents.  Based on his nonreceipt of those documents from Karen Temple, Walter concludes that Karen Temple must have acted in her personal capacity in deciding not to send

17

documents he says she was legally and ethically obligated to provide to him as a beneficiary of the trust.  Even assuming that Karen Temple should have provided the documents to Walter, any such duty arose only because Karen Temple was the trustees' attorney.  At worst, assuming Walter correctly defines Karen Temple's duties (a matter this court need not resolve), Karen Temple performed her duties as counsel poorly.  "Whether [Karen Temple] rendered [her] services well or poorly, properly or improperly, is irrelevant to the <u>Reves</u> [operation or management] test."  <u>See</u> <u>Baumer</u>, 8 F.3d at 1344.

Just as the attorney in <u>Baumer</u> had not done enough to demonstrate that he had participated in the operation or management of the enterprise by merely acting as counsel, Karen Temple and her law firm, to the extent their activities are set forth in the SAC, acted as the trustees' attorney.  The SAC is insufficient in alleging that Temple Defendants operated or managed the alleged enterprise.

In discounting Walter's allegations that the Temple Defendants were acting personally rather than providing legal services, this court is taking to heart the guidance provided by <u>Sprewell</u> and a long line of Ninth Circuit cases, all limiting the kind of allegations that courts must accept as true in deciding Rule 12(b)(6) motions.  When the Ninth Circuit said in <u>Sprewell</u> that a court is not required to accept as true mere conclusions,

unwarranted deductions of fact, or unreasonable inferences, 266 F.3d at 988, the appellate court cited to Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994).  In Clegg, the Ninth Circuit said, "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Id. at 754-55.  See also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004)(citing Clegg and Sprewell); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) ("We do not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.").

In essence, Walter's purported factual allegations rest on indefensible legal conclusions.  That is, in alleging that the Temple Defendants must have acted in their personal capacities because they allegedly breached legal and ethical duties, Walter is assuming that, by law, a breach of legal or ethical duties cannot constitute the provision of legal services.  This is a conclusion to which this court need give no credence.

Walter's allegations are akin to an allegation made by the Chumash Indians in Chunie v. Ringrose, 788 F.2d 638 (9th Cir. 1986).  The Chumash contended that certain islands were not within an area of ceded land.  Noting that this issue had been settled as a matter of law in an earlier decision by the United

19

States Supreme Court, the Ninth Circuit declined to accept the contention as true. Id. at 643 n.2. Although the United States Supreme Court has not spoken to Walter's allegations, they are similarly undeserving of acceptance.

In Manufactured Home Communities, Inc. v. City of San Jose, 420 F.3d 1022 (9th Cir. 2005), the plaintiff alleged that it should be excused from exhausting administrative remedies because it would be futile, given the bias of the hearing officer. The Ninth Circuit rejected this allegation as "nothing more than speculation" and concluded that it "need not accept baseless allegations as proof of futility" on a motion to dismiss. Id. at 1035. Walter's allegations with respect to the capacity in which the Temple Defendants acted are equally baseless.

Because Temple Defendants merely provided legal services, they did not, by taking the actions alleged in the SAC, participate in a RICO enterprise. This means that there could not have been any RICO enterprise, as the only other alleged participants are Drayson and Elizabeth Walter, and Walter concedes that they do not themselves form a RICO enterprise. An enterprise is an essential element of a RICO claim. Lacking an enterprise, Walter fails to state a claim in Count XVI, which alleges a violation of 18 U.S.C. § 1962(c).

      2.    To the Extent Count XVII Asserts an Alleged
          <u>Conspiracy to Violate RICO, It is Dismissed.</u>

In Count XVII, Walter alleges a conspiracy to violate

§ 1962(c).  Such a conspiracy is unlawful under 18 U.S.C.

§ 1962(d).  Because Walter's conspiracy claim relies on alleged

substantive violations of § 1962(c), and because the § 1962(c) is

deficient, the claim of conspiracy under § 1962(d) also fails.

This means that both federal claims are dismissed.

III.     <u>ABSENCE OF DIVERSITY JURISDICTION.</u>

Having dismissed both federal claims under Rule

12(b)(6), the court's jurisdiction, should it choose to exercise

it over the remaining state claims, would be supplemental, unless

there is some other independent basis for subject matter

jurisdiction.  Walter alleges in the SAC that, quite apart from

the federal question jurisdiction conferred by the RICO claims,

this court has diversity jurisdiction.  If Walter is correct,

then this court is compelled to preside over the state claims.

In examining whether it has subject matter

jurisdiction, the court may consider whether the allegations of

the complaint are insufficient to confer subject matter

jurisdiction.  In that event, all allegations of material fact

are taken as true and construed in the light most favorable to

the nonmoving party.  <u>Fed'n of African Am. Contractors</u>, 96 F.3d

at 1207.  The court may alternatively consider whether it has

diversity jurisdiction as a factual matter, in which event no

presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

Defendants argue that this court lacks diversity jurisdiction because Rock, the third trustee, must be joined as a party under Rule 19 of the Federal Rules of Civil Procedure. That joinder would destroy diversity because Rock and Walter are both citizens of Colorado.  See Declaration of Eugene Rock (July 6, 2007) ¶¶ 2-3 (indicating that Rock is a citizen of Colorado); SAC ¶ 11 (indicating that Walter is a citizen of Colorado). According to Defendants, Rock is a necessary party because Walter's breach of fiduciary duty claims against Drayson and Elizabeth are equitable in nature and  require the inclusion of all trustees to be resolved.  They characterize Walter's claims as equitable on the grounds that neither Drayson nor Elizabeth Walter is "under a duty to pay money immediately and unconditionally" to Walter and because their alleged amount of liability is not "definite and clear."  Drayson's Motion to Dismiss at 18-19; Elizabeth Walter's Motion to Dismiss at 18-19. Walter responds by claiming that he is not seeking equitable relief, but only legal damages.  Opp. to Drayson's Motion to

22

Dismiss at 16-20.  The court concludes that Rock is a necessary party who must be joined.

Rule 19 of the Federal Rules of Civil Procedure governs compulsory joinder in federal district courts.  EEOC v. Peabody W. Coal Co., 400 F.3d 774, 778 (9th Cir. 2005), cert. denied, 126 S. Ct. 1164 (2006).  In relevant part, Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party.

Rule 19(b) provides that, if it is not feasible for the court to join a person meeting the requirements of Rule 19(a), the court

> shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.  The factors to be considered by the court include:  first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the

23

> extent to which, by protective provisions in
> the judgment, by the shaping of relief, or
> other measures, the prejudice can be lessened
> or avoided; third, whether a judgment
> rendered in the person's absence will be
> adequate; fourth, whether the plaintiff will
> have an adequate remedy if the action is
> dismissed for nonjoinder.

EEOC, 400 F.3d at 779 (quoting Fed. R. Civ. P. 19(b)).

The Ninth Circuit interprets Rule 19 as requiring "three successive inquiries." Id. "First, the court must determine whether a nonparty should be joined under Rule 19(a)." Id. "If the absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." Id. "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." Id.

The first inquiry is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." Id. at 780. The Ninth Circuit says that, in determining whether a nonparty should be joined under Rule 19(a), the court uses "the term 'necessary' to describe those 'persons to be joined if feasible.'" Id. at 779.

Regarding the second inquiry, the Ninth Circuit says that "Rule 19(a) sets forth three circumstances in which joinder

24

is not feasible:  when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." <u>Id.</u> (citing Fed. R. Civ. P. 19(a); <u>Tick v. Cohen</u>, 787 F.2d 1490, 1493 (11th Cir. 1986)).

With respect to the last inquiry of whether the case should proceed without the absentee or whether the absentee is an indispensable party such that the action must be dismissed, the Ninth Circuit states, "Rule 19 uses the word 'indispensable' only in a conclusory sense, that is, a person is 'regarded as indispensable' when he cannot be made a party and, upon consideration of the factors in Rule 19(b), it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it." <u>EEOC</u>, 400 F.3d at 780.

1.   <u>Whether Rock is a Necessary Party.</u>

Regarding the first inquiry, which addresses whether "complete relief cannot be accorded among those already parties," Defendants argue that all of the trustees, including Rock, are necessary parties because Walter's breach of fiduciary claims are equitable claims requiring equitable relief.  Drayson's Motion to Dismiss at 18-27; Elizabeth Walter's Motion to Dismiss at 18-19, 22-23.  This court agrees.

Although the SAC prays for only damages and expressly "does not seek present or future . . . equitable relief," the relief prayed for in the SAC is not dispositive of whether

25

Walter's claims for breach of fiduciary duty are legal or
equitable.  See Van de Kamp v. Bank of Am. Nat'l Trust & Sav.
Ass'n, 204 Cal. App. 3d 819, 865 (Cal. Ct. App. 1998) ("While
plaintiffs sought damages, that fact by itself does not make the
action one at law."); Carstens v. Cent. Nat'l Bank & Trust Co. of
Des Moines, 461 N.W.2d 331, 333 (Iowa 1990) ("The fact that an
action seeks monetary relief does not necessarily define the
action as one at law.").  Rather, this court must "look at the
essential nature of the cause of action, rather than solely at
the remedy," to determine if a claim is legal or equitable in
nature.  Carstens, 461 N.W.2d at 333.

     "Traditionally, the remedies of the beneficiary of a
trust against the trustee have been almost exclusively within the
jurisdiction of equity."  Jefferson Nat'l Bank of Miami Beach v.
Cent. Nat'l Bank in Chicago, 700 F.2d 1143, 1149 (7th Cir. 1983)
(citing Restatement (Second) of Trusts § 197 (1959) ("Except as
stated in § 198, the remedies of a beneficiary against the
trustee are exclusively equitable.")).  The only exception to
this general rule exists when "a trustee is under a duty to pay
money immediately to the beneficiary."  Id.  In such a case, "the
beneficiary can maintain an action at law against the trustee to
enforce payment."  Id. (quoting Restatement (Second) of Trusts
§ 198 (1959) ("If the trustee is under a duty to pay money
immediately and unconditionally to the beneficiary, the

beneficiary can maintain an action at law against the trustee to enforce payment.")).

However, when the trustee is under no obligation to make immediate and unconditional payment, "beneficiaries are relegated to a suit in equity, based upon a fiduciary relationship to compel the trustee to redress a breach of trust by restoring the corpus." Magill v. Dutchess Bank & Trust Co., 541 N.Y.S.2d 437, 439 (N.Y. App. Div. 1989); see also Lee v. Lee, 47 S.W.3d 767, 798 (Tex. App. 2001) ("Unless a trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary may only sue to compel the trustee to restore money to the trust." (citing Restatement (Second) of Trusts § 198 cmt. c ("If the trustee is not under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary cannot maintain an action at law against him."))). In such cases, the claims are equitable. See Midwest Sec. Life Ins. Co. v. Stroup, 730 N.E.2d 163, 170 (Ind. 2000) ("Under trust law, a beneficiary's suit against the trustee is viewed as an action at law only if it is for an amount due 'immediately and unconditionally.' Otherwise, it is in the nature of an equitable claim." (internal citation omitted)); see also Downs v. Liberty Life Assurance Co. of Boston, No. Civ. A. 3:05-CV-0791R, 2005 WL 2455193, at *7 n.4 (N.D. Tex. Oct. 5, 2005) ("If the trustee is not under a duty to pay money immediately and unconditionally to

the beneficiary, the beneficiary cannot maintain an action at law against him.").

In light of the foregoing analyses, to decide whether Walter's claims for breach of fiduciary duty are legal or equitable in nature, this court looks to whether the trustees are under a duty to pay money immediately and unconditionally to Walter.  None of the parties points to, and this court has not found, Hawaii law on this point.  Because other jurisdictions have addressed this issue in detail, this court turns to those jurisdictions for guidance.

Courts addressing whether a trustee is under a duty to immediately and unconditionally pay money to a beneficiary hold that, "[i]n order to maintain an action at law, the liability of the trustee must be definite and clear, with no accounting necessary to establish it."  Van de Kamp, 204 Cal. App. 3d at 864.  Stated differently, "An action at law is maintainable against a trustee where the relief sought is a specified sum of money obtainable without an accounting."  Clark v. U.S. Nat'l Bank, 503 P.2d 502, 505 n.2 (Or. Ct. App. 1972).  "An accounting is necessary where the fiduciary becomes liable for various sums of money and plaintiffs do not know what money is due them."  Van de Kamp, 204 Cal. App. 3d at 864.  "Where an accounting is required, the action is equitable."  Id.

28

For example, in <u>Van de Kamp</u>, 204 Cal. App. 3d at 831,
beneficiaries sued the trustee for "breach of fiduciary duty,
fraud, unjust enrichment, unfair competition, unfair and
deceptive trade practices, and negligence." Because the case was
originally set for a jury trial, the trustee "moved to vacate the
setting for jury trial on the ground the action was equitable."
<u>Id.</u> at 832. The trial court granted the trustee's motion. <u>Id.</u>
After a bench trial and entry of judgment in the trustees' favor,
the beneficiaries appealed, arguing that the trial court erred in
vacating the jury trial because, "although equitable principles
are involved in the case, the action is one for legal relief,
i.e., damages." <u>Id.</u> at 833.

On appeal, the California Court of Appeal noted that a
right to a jury trial exists when the action is one at law, but
that there is "no entitlement to a trial by jury in an equitable
action." <u>Id.</u> at 863. Although the court stated that an
"equitable action to enforce a trust has in contemplation the
terms, conduct, and management of the trust [and] the settlement
of the trustee's accounts," the court also stated that the
beneficiaries could maintain an action at law against the trustee
if the liability of the trustee was "definite and clear, with no
accounting necessary to establish it." <u>Id.</u> at 864. The court
also noted, "An action is one in equity where the only manner in
which the legal remedy of damages is available is by application

29

of equitable principles." Id. at 865.  Because the court found
that the "amount of [the trustee's] liability to [the
beneficiaries], if any, was not definite and clear and would have
to be established by an accounting," the court concluded that
"the only way in which the remedy of damages could be afforded
was by the application of equitable principles, i.e., an
accounting." Id.  Additionally, the court stated that the
beneficiaries' challenge to "the manner in which [the trustee]
conducted itself with regard to the trust property . . .
indicates the action is one in equity rather than law." Id.  The
court therefore held that the beneficiary's "action is one in
equity, not at law" and that "the fact [the beneficiaries] sought
money damages did not make an equitable action into one at law."
Id.

Other courts hold that an action at law exists when the
trust is closed or "there has been a final settlement of accounts
and nothing remains on the part of the trustee but to pay over
the amount found to be due." Howard v. Howe, 131 S.W.2d 517, 520
(Miss. 1939) (en banc); Clark, 503 P.2d at 505 n.2 ("Where a
trust has terminated under the terms of its express provisions,
and the trustee has failed to distribute the corpus, an action at
law for money had and received may be maintained by the
beneficiaries.").

For instance, in <u>Dickerson v. Central Union Trust Co. of New York</u>, 180 N.Y.S. 728, 729 (N.Y. App. Div. 1920), the assignee of one of the beneficiaries of a trust sued the trustees, asserting that the assignee was entitled to the assigned portion of the beneficiary's interest in the trust.  The issue was "whether under the facts alleged and proved, an action at law can be maintained, or whether plaintiff's remedy, if any, is in equity."  <u>Id.</u>  The court noted that "the usual remedy of a beneficiary against a trustee is in equity" and that "[i]t is the peculiar province of equity to supervise the execution of trusts, distribution of trust property, and the conduct of trustees."  <u>Id.</u>  The court added:  "Where, however, the trust has been closed or at least so far as the matter in hand is concerned and an amount fixed, or balance found due, and directed to be paid, and nothing remains to be done but to make payment, so that a legal debt or obligation has been created, there an action at law may be maintained as for money had and received, or on the implied promise arising out of the legal obligation to pay."  <u>Id.</u>  The court concluded, however, that, in the case before it, there was "no . . . direction to pay a sum certain."  <u>Id.</u> at 730.

The court also noted that the "accounts of the trustee have not been settled, amounts to come may never be collected or received, and if they are the expenses and commissions are still to be determined and this can only be done in equity."  <u>Id.</u>  The

31

trustees' receipt of "certain amounts of the income sufficient to more than cover expenses and commissions does not change the situation." Id.  The court then concluded that the action was equitable and not legal.  Id.

Walter's breach of fiduciary duty claims are based on, among other things, the trustees' failure to collect rental income from Patricia Walter's Maui Kaanapali Villas two-bedroom condominium from October 29, 2005, through June 30, 2006.  SAC ¶¶ 95-96, 133.  In the SAC, Walter explains that, on July 7, 2006, Elizabeth Walter sent him an email regarding a preliminary distribution.  Id. ¶ 95.  Walter says that Elizabeth Walter attached to the email the Statement of Expenses that governed the period from Patricia Walter's death on October 29, 2005, through June 30, 2006.  Id.  Walter alleges that the Statement of Expenses showed no rental income for the condominium.  Id. ¶ 96. Although Walter makes no mention of the precise amount of money that should have been collected as rent, he says that the Maui Kaanapali Villas "is managed by ResortQuest which, according to its web site, rents 2 bedroom, 2 bath condos at [Maui Kaanapali Villas] for a standard 2006 rate of $525-$625 per night." Id. ¶ 97.  Walter also says that the Statement of Expenses "misrepresented the income and expenses incurred by the Trust during the dates covered, as they omitted receipt of income from in-kind services provided by affiliates of [Elizabeth Walter] in

exchange for free use of the Condo by relatives of such affiliates, an expense for financial and tax purposes." <u>Id.</u> ¶ 105.

Walter clearly does not provide or allege, and may understandably not know, the precise amount of rent that should have been collected from October 29, 2005, through June 30, 2006. He claims only that ResortQuest rented other two-bedroom condominium units for various prices during 2006 and fails to provide any information on the amount charged by ResortQuest during 2005. An accounting appears necessary to determine how much uncollected rent, if any, Walter is entitled to. <u>See</u> <u>Van de Kamp</u>, 204 Cal. App. 3d at 864.

Moreover, Walter has not alleged that a "final settlement of accounts" has occurred or that "nothing remains on the part of the trustee but to pay over the amount found to be due." <u>See</u> <u>Howard</u>, 131 S.W.2d at 520. On the contrary, Walter alleges that the Statement of Expenses omitted income from the rental of the condominium unit, which Walter characterizes as "an expense for financial and tax purposes." SAC ¶ 19. Because Walter alleges that the trustees may not have paid appropriate taxes on the uncollected rent, the trustees may have to decide whether to pay taxes on that income. As in <u>Dickerson</u>, 180 N.Y.S. at 730, the "accounts of the trustee[s] have not been settled, amounts to come may never be collected or received, and if they

33

are, the expenses and commissions are still to be determined, and this can only be done in equity."

Because the liability of the trustees is not definite and requires an accounting to establish it, and because the final settlement of accounts is not alleged to have yet occurred, Walter is not entitled to an immediate and unconditional payment from the trustees. Van de Kamp, 204 Cal. App. 3d at 864; Dickerson, 180 N.Y.S. at 729-30; Clark, 503 P.2d at 505 n.2. Accordingly, with respect to at least the uncollected rent, Walter "may only sue to compel the trustee[s] to restore money to the trust." See Lee, 47 S.W.3d at 798; see also Van de Kamp, 204 Cal. App. 3d at 864; cf. R.E.R. v. J.G., 552 N.W.2d 27, 30. (Minn. Ct. App. 1996) ("Equity allows recovery of the lost value of an asset, the profit of which a beneficiary was deprived, or any improper financial gains made by the fiduciary.").

The parties do not dispute the general rule that, "in suits respecting trust property brought either by or against trustees[,] the cestuis que trust as well as the trustees are necessary parties." Lucas v. Lucas, 20 Haw. 433, 441-42 (Haw. 1911); see also Roth v. Lehmann, 741 S.W.2d 860, 862 (Mo. Ct. App. 1987) ("As a general rule in suits involving trust property both the trustees and the beneficiaries are necessary parties."). Because Walter's only remedy regarding the uncollected rent is to compel the trustees to restore money to the trust, Walter's

breach of fiduciary duty claim based on the alleged uncollected
rent, if successful, will affect trust property.  All trustees,
including Rock, are necessary to a resolution of this claim.  <u>See</u>
<u>Lucas</u>, 20 Haw. at 441-42; <u>cf.</u> <u>EEOC</u>, 400 F.3d at 778-79.

>    2.    <u>Whether Rock's Joinder is Feasible.</u>

Having concluded that Rock is a necessary party, the
court must determine "whether it is feasible to order that [Rock]
be joined."  <u>See</u> <u>EEOC</u>, 400 F.3d at 779.  Defendants argue that
Rock's joinder is not feasible because Rock, a citizen of
Colorado, like Walter, will destroy the court's diversity
jurisdiction.  <u>See</u> Drayson's Motion to Dismiss at 25.  This
argument overlooks the court's supplemental jurisdiction over the
remaining claims.  This supplemental jurisdiction is a product of
the court's federal question jurisdiction and does not depend on
the existence of diversity jurisdiction.  Under these
circumstances, Rock's joinder will not divest this court of
jurisdiction and is feasible.

It is true, as Defendants note, that joinder under
Rule 19 is not feasible "when joinder would destroy subject
matter jurisdiction."  <u>EEOC</u>, 400 F.3d at 779.  Thus, if the
court's only ground for exercising jurisdiction were diversity
jurisdiction, which "requires complete diversity of citizenship,"
Rock's joinder would indeed destroy jurisdiction and so would not
be feasible.  <u>See</u> <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d

1061, 1067 (9th Cir. 2001); see also 28 U.S.C. § 1332(a)(1).
After all, for complete diversity to exist, a plaintiff "must be
a citizen of a different state than each of the defendants," see
Morris, 236 F.3d at 1067, and it is undisputed that Walter and
Rock are both citizens of Colorado.  But deficient as Walter's
federal RICO claims were, they clearly conferred federal question
jurisdiction on this court when this lawsuit commenced.  Although
the court dismisses the federal claims in this order, that
dismissal is based on Walter's failure to state a claim, not for
lack of jurisdiction over the federal claims.  Even had Walter
not invoked diversity jurisdiction as an additional basis for
jurisdiction, this court would have the right to exercise
supplemental jurisdiction over the state claims that accompanied
the federal RICO claims.  Supplemental jurisdiction over state
claims exists when a federal claim is sufficiently substantial to
confer federal jurisdiction, and there is "a common nucleus of
operative fact between the state and federal claims."  Brady v.
Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citing Gilder v. PGA
Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991)); see also 28
U.S.C. § 1367.

        Walter is not now worse off from a jurisdictional
standpoint for having alleged the additional jurisdictional
ground of diversity.  The court's right to exercise supplemental
jurisdiction over the state law claims stems from the court's

36

federal question jurisdiction.  That right continues even after the federal claims are dismissed on nonjurisdictional grounds, see Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805-06 (9th Cir. 2001), and is equally unaffected by the absence of diversity jurisdiction.  This court's right to exercise supplemental jurisdiction makes Rock's joinder feasible.  See EEOC, 400 F.3d at 779.  The court therefore concludes that Rock must be joined under Rule 19 of the Federal Rules of Civil Procedure.  See id.  Because joinder is feasible, this court need not reach the question of whether Rock is indispensable, an inquiry necessary only if joinder is unfeasible.

IV.      The Court Declines to Exercise Supplemental
         Jurisdiction Over the Remaining State Law Claims.

         Having dismissed the claims conferring federal question jurisdiction and having destroyed any possibility of diversity jurisdiction by joining Rock, this court now considers whether it should exercise supplemental jurisdiction over Walter's remaining state law claims.  Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory.  A court may decline to exercise supplemental jurisdiction over a state law claim if:  (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in

exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367.

Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."  Gibbs, 383 U.S. at 726.  Although the Supreme Court has stated that such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," it has also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The state law claims asserted in the SAC raise novel issues of state law.  For example, at the hearing, Elizabeth Walter asked this court to certify to the Hawaii Supreme Court the issue of whether the federal RICO analysis should be applied to the Hawaii RICO claim.  Walter stated that he had no objection to such certification.  This case also involves the issue of whether Hawaii law would recognize a claim brought by a vested

beneficiary of a trust based on events that occurred while the plaintiff was only a contingent beneficiary of the trust. Because the state law claims also substantially predominate over the RICO claims alleged in the SAC, and because this court has dismissed all of the claims over which it had original jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims asserted in the SAC. Those state law claims are therefore dismissed without prejudice to any state court filing that may be appropriate under state law. This ruling obviates the need for this court to address a number of other issues raised in Defendants' motions.

V.      CONCLUSION.

The court grants Defendants' motions to dismiss all claims in the SAC. No claims remain for further adjudication, and the Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 6, 2007.


_Susan Oki Mollway_
Susan Oki Mollway
United States District Judge


**Walter v. Drayson, et al.**, Civ. No. 06-00568 SOM/KSC; ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS.